IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


SKYE PRICE,

        Plaintiff,

vs.                      Case No. 13-1055-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

Plaintiff filed his application for social security disability on March 3, 2005 (R. at 17). On December 20, 2007, administrative law judge (ALJ) Edmund C. Were issued the 1st ALJ decision denying plaintiff disability benefits (R. at 17-32).

Following the decision of the Appeals Council on June 6, 2009 denying review of the ALJ decision (R. at 14-16), plaintiff sought judicial review of the agency decision. On August 17, 2010, Judge Lungstrum reversed the decision of the Commissioner and remanded the case for further hearing (R. at 524-548).

On November 18, 2011, administrative law judge (ALJ) James Harty issued the 2nd ALJ decision (R. at 474-493). Plaintiff alleges that he had been disabled since November 1, 2003 (R. at 474). Plaintiff is insured for disability insurance benefits through March 31, 2009 (R. at 477). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 477). At step two, the ALJ found that plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine status/post discectomy, major depressive disorder, and alcohol dependence (R. at 477). At step three, the ALJ determined that plaintiff's impairments, including the substance abuse disorder, meet a listed impairment (R. at 479). If the plaintiff stopped the substance use, the ALJ found that plaintiff's impairments would not meet a listed impairment (R. at 480). After assessing plaintiff's RFC (R. at 481), the ALJ found at step four that, absent substance use, plaintiff would be unable to perform past relevant work (R. at 492). At step five, the ALJ found that plaintiff could still perform a significant number of jobs in

the national economy (R. at 492-493).  The ALJ concluded that substance use disorder is a contributing factor material to the determination of disability because the plaintiff would not be disabled if he stopped the substance use.  Because the substance use is a contributing factor material to the determination of disability, the plaintiff has not been disabled at any time from the alleged onset date through the date of the ALJ decision (R. at 493).

**III.  Did the ALJ err in his consideration of the medical evidence?**

Plaintiff first argues that the ALJ erred by failing to identify the weight given the opinions of Dr. Morrow or Dr. Oommen (Doc. 15 at 27).  Dr. Oommen prepared a consultative examination and assessment on October 15, 2005 (R. at 271-275), and Dr. Morrow prepared a consultative examination and assessment on February 19, 2010 (R. at 870-872).

The ALJ referenced both examinations in his decision (R. at 484, 485, 486, 489-490).  The ALJ cited to the findings of Dr. Oommen to discount opinions of Dr. Goertzen (R. at 489-490).  The ALJ also cited to the findings of Dr. Morrow to discount plaintiff's allegations (R. at 486).  However, neither Dr. Oommen nor Dr. Morrow offered any opinions regarding plaintiff's ability to work.  Thus, neither offered an opinion that could be evaluated by the ALJ for purposes of making RFC findings.

6

Endriss v. Astrue, 506 Fed. Appx. 772, 778 (10th Cir. Dec. 26, 2012)(although physical therapist indicated that plaintiff had limitations in claimant's cervical range of motion, she did not opine as to how those limitations would affect claimant's ability to function; thus, the ALJ did not err by not evaluating the weight to be given to those findings). Therefore, the court finds no error in the ALJ's consideration of the reports from Dr. Oommen or Dr. Morrow.

Plaintiff also alleges error in the ALJ's analysis of the opinions of Dr. Goertzen, a treatment provider. The ALJ gave some weight to his opinions, but stated that his opinions were not entitled to controlling weight due to internal inconsistencies and the lack of objective support in the record (R. at 489-490). The court would note that the opinions of Dr. Goertzen are on a check-the-box physical RFC assessment form with no explanation or narrative in support of his opinions (R. at 293-299A). The ALJ stated that his opinions are not supported by other medical findings, and discussed those medical findings which the ALJ found not to support the opinions of Dr. Goertzen. Plaintiff does not cite to any other medical opinion evidence that supports the limitations set forth by Dr. Goertzen. The physical RFC assessment, affirmed by Dr. Siemsen, contained a narrative summary in support of those findings,

unlike the assessment by Dr. Goertzen (R. at 891-900). The ALJ accorded "some" weight to this opinion (R. at 490).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th Cir. 2005); <u>White v. Barnhart</u>, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). The court finds no clear error by the ALJ in his analysis of the opinions of Dr. Goertzen.

The court will next consider the weight given by the ALJ to the opinions of Dr. Allen, who performed a consultative mental status exam on the plaintiff on February 25, 2010 (R. at 865-867). Dr. Allen's conclusions were as follows:

> Mr. Price appears to be able to understand and carry out simple instructions. His problems with depression and anxiety may sometimes get in the way of his sustaining attention and concentration. He would work best [in] a low-key environment that is not very crowded. He may have some difficulty with sustaining attendance, but could maintain standards of productivity. He really does not have much of an opportunity to be persistent with regular tasks, and it is suspected that there could be some problems with his managing his finances.

(R. at 867). The ALJ gave "significant" weight to her opinions (R. at 490).

The ALJ's mental RFC findings for the plaintiff limited him to simple routine repetitive tasks not performed in a fast-paced production environment or as an integral part of a team.

8

Plaintiff was further limited to occasional interaction with supervisors, coworkers, and the general public (R. at 482). The ALJ, despite giving "significant" weight to this opinion, did not expressly include in his RFC findings some of the limitations in Dr. Allen's report, including difficulty with sustaining attention and concentration, and difficulty with sustaining attendance, and the ALJ offered no explanation for failing to include the limitations in Dr. Allen's report in his RFC findings.

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

In the case of Martinez v. Astrue, 422 Fed. Appx. 719, 724-725 (10th Cir. Apr. 26, 2011), the court held that the ALJ erred

by failing to include all of the limitations found by Dr. LaGrand without explaining why he rejected some of the limitations, especially in light of the ALJ's conclusion that the medical source's opinion was entitled to "great weight." The ALJ simply ignored certain limitations contained in the medical report. The court held that the ALJ may have had reasons for giving great weight to some of the limitations set forth by the medical source, while rejecting other limitations. However, before rejecting some of the limitations, the ALJ was required to discuss why he did not include those limitations. An ALJ should explain why he rejected some limitations contained in a RFC assessment from a medical source while appearing to adopt other limitations contained in the assessment. Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).

Defendant argues that while not exactly the same, Dr. Allen's opinions are substantially consistent with the ALJ's mental RFC findings (Doc. 22 at 7). However, the opinions of Dr. Allen are not substantially consistent with the ALJ's RFC findings. The ALJ limited plaintiff to simple, routine, repetitive tasks not performed in a fast-paced production environment.[2] However, even simple work can be ruled out by a vocational expert on the basis of a serious impairment in

---

[2] Although the ALJ had earlier found that plaintiff had moderate difficulties with concentration, persistence or pace (R. at 480), and in light of the "significant" weight given to the opinion of Dr. Allen (including difficulty with sustaining attention and concentration), the ALJ, inexplicably, did not include any limitations in attention and concentration in his RFC findings for the plaintiff.

10

concentration and attention. Moderate impairments may also decrease a claimant's ability to perform simple work. Bowers v. Astrue, 271 Fed. Appx. 731, 733 (10th Cir. March 26, 2008); see Brosnahan v. Barnhart, 336 F.3d 671, 675 (8th Cir. 2003); Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996)(two medical opinions indicated that that claimant had moderate limitations in his ability to maintain attention and concentration for extended periods; the vocational expert testified that a moderate deficiency in concentration and persistence would cause problems on an ongoing daily basis regardless of what the job required from a physical or skill standpoint; the court rejected the Commissioner's contention that deficiencies in attention and concentration, along with other mental limitations, did not have to be included in the hypothetical question because the question limited the claimant's capabilities to simple jobs).

Furthermore, in Wiederholt v. Barnhart, 121 Fed. Appx. 833, 839 (10th Cir. Feb. 8, 2005), the ALJ posed a hypothetical question that limited plaintiff to simple, unskilled work, and omitted from the hypothetical the ALJ's earlier and more specific findings that she had various mild and moderate restrictions. The court held that the relatively broad, unspecified nature of the description "simple" and "unskilled" did not adequately incorporate additional, more specific findings regarding a claimant's mental impairments (including

11

moderate difficulty in maintaining concentration, persistence, or pace), and therefore the hypothetical question was flawed. Because of the flawed hypothetical, the court found that the VE's opinion that the claimant could perform other work was therefore not substantial evidence to support the ALJ's decision.

The ALJ's RFC findings are silent regarding limitations on sustaining attention and concentration, and sustaining attendance, and the ALJ offers no explanation for not including them in the RFC findings. It is clear from the case law that such a limitation may well impact plaintiff's ability to perform even simple jobs. The ALJ clearly erred by giving "significant" weight to the opinions of Dr. Allen, but, without explanation, not including all of the limitations contained in her report in the ALJ's RFC findings. On remand, the ALJ should either include all of the limitations in the assessment in the RFC findings, or, in the alternative, provide a legally sufficient explanation for not including these limitations in plaintiff's RFC findings.

**IV. Did the ALJ err in finding plaintiff's alcohol dependence material to a determination of disability?**

In 1996, Congress passed Public Law 104-121. It added the following language to 42 U.S.C. § 423(d)(2):

> (C) An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

20 C.F.R. § 404.1535 (disability insurance) and § 416.935 (SSI) are identical, and are the implementing regulations governing this issue. The implementing regulations make clear that a finding of disability is a condition precedent to an application of §423(d)(2)(C). The Commissioner must first make a determination that the claimant is disabled. He must then make a determination whether the claimant would still be found disabled if he or she stopped abusing alcohol or drugs. If so, then the alcohol or drug use is not a contributing factor material to the finding of disability. If however, the claimant's remaining impairments would not be disabling without the alcohol or drug abuse, then the alcohol or drug abuse is a contributing factor material to the finding of disability. The ALJ cannot begin to apply §423(d)(2)(C) properly when he has not yet made a finding of disability. <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1214-1215 (10th Cir. 2001). In other words, an ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no

need to proceed with the analysis under §§ 404.1535 or 416.935. If the ALJ finds that the claimant is disabled and there is medical evidence of his or her drug addiction or alcoholism, then the ALJ should proceed under §§ 404.1535 or 416.935 to determine if the claimant would still be found disabled if he or she stopped using alcohol or drugs. Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001).

Plaintiff argued that, contrary to the ALJ's findings, his functioning did not improve when he was sober. The defendant responded by stating that "**although the ALJ's decision is unclear on this point**, substantial evidence supports his finding that Plaintiff's functioning improved during sobriety" (Doc. 22 at 6 n.2, emphasis added).

In the case of Salazar v. Barnhart, 468 F.3d 615 (10th Cir. 2006), the court referred to a teletype sent out by the Commissioner which pertains to Pub. L. 104-121. The court summarized portions of the teletype as follows:

> Shortly after the law [Pub. L. 104-121] was amended, the Commissioner sent out a teletype on applying the new law, which speaks to situations where a claimant has one or more other mental impairments in addition to DAA [drug addiction or alcoholism]. It stresses the need for careful examination of periods of abstinence and also directs that if the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, the DAA is not a contributing factor material to the disability determination.

14

.........

> With regard to the materiality finding, the
> Commissioner's teletype further directs that
> where a medical or psychological examiner
> cannot project what limitations would remain
> if the claimant stopped using drugs or
> alcohol, the disability examiner should find
> that DAA is not a contributing factor
> material to the disability determination.
>
> .........
>
> **Further, the Commissioner's teletype
> instructs that where the record is devoid of
> any medical or psychological report,
> opinion, or projection as to the claimant's
> remaining limitations if she stopped using
> drugs or alcohol, an ALJ should "find that
> DAA is not a contributing factor material to
> the determination of disability."**

Salazar, 468 F.3d at 623, 624 (emphasis added).

As in Salazar, the ALJ in the case before the court does not, in support of his assertion that plaintiff is not disabled absent consideration of his substance use, cite to any medical report, opinion, or projection as to plaintiff's remaining physical and mental limitations if he stopped substance use. Even defendant admitted the ALJ's decision is unclear on the point that substantial evidence supported the ALJ's finding that plaintiff's functioning improved during sobriety. By contrast, Dr. Xu, a treating psychiatrist, had opined that plaintiff's limitations would be disabling even if drug and alcohol abuse were to stop (R. at 359-362). Although the ALJ set forth

15

reasons for discounting the opinions of Dr. Xu (R. at 487), the ALJ failed to cite to any medical or psychological report, opinion, or projection as to plaintiff's remaining limitations if he stopped using drugs or alcohol, as required by Salazar. Therefore, this case shall be remanded in order for the ALJ to make new findings on the issue of whether plaintiff's substance use is a contributing factor material to the determination of disability in accordance with the statues, regulations, and case law set forth above.

One of the reasons the ALJ gave for discounting the opinions of Dr. Xu is that the GAF score of 55 assigned by Dr. Xu is inconsistent with his opinion that plaintiff had marked limitations in 3 categories. However, Dr. Xu also found that plaintiff had moderate limitations in 10 categories and no significant limitations in 7 categories).[3] Furthermore, standing alone, a GAF score, which can reflect social and/or occupational functioning, does not necessarily evidence whether an impairment seriously interferes with a claimant's ability to work. See Lee

---

[3] GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).
>
> 41-50**: Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job) (emphasis in original).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

16

v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004). Because a GAF score may not relate to a claimant's ability to work, the score, standing alone, without further explanation, does not establish whether or not plaintiff's impairment severely interferes with an ability to perform basic work activities. See Eden v. Barnhart, 109 Fed. Appx. 311, 314 (10th Cir. Sept. 15, 2004). GAF scores are not considered absolute determinants of whether or not a claimant is disabled. Heinritz v. Barnhart, 191 Fed. Appx. 718, 722 (10th Cir. Aug. 10, 2006).

In addition, there is no medical opinion evidence that the GAF scores in the record do not correlate with the opinions of Dr. Xu. The adjudicator is not free to substitute his own medical opinion for that of a disability claimant's treatment providers. Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004). An ALJ is not entitled to sua sponte render a medical judgment without some type of support for his determination. The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002). In the absence of any medical opinion or other evidence indicating that the GAF score of Dr. Xu is inconsistent with his opinions, the ALJ overstepped his bounds into the province of medicine. Miller v. Chater, 99 F.3d 972, 977 (10th

Cir. 1996); McLeland v. Astrue, 2009 WL 348290 at *8 (D. Kan. Feb. 11, 2009, Doc. 26 at 18).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 26th day of March 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge